## KAHLER v. THRON.

(Supreme Court, Appellate Division, Fourth Department.   March 12, 1913.)

1. EJECTMENT (§ 96*)—ACTIONS—SUFFICIENCY OF EVIDENCE—POSSESSION.
>   Evidence in ejectment *held* not to show that plaintiff was in possession of the disputed land on or at any time after October 29, 1896, when she received her deed.
>
>   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 296–298; Dec. Dig. § 96.*]

2. EJECTMENT (§ 16*)—OBTAINING POSSESSION.
>   Where, on the day after plaintiff attempted to assert possession of land in controversy by building a fence between him and defendant's other land, defendant had the fence removed, plaintiff did not obtain actual possession by entering and erecting the fence, so that defendant's removal thereof was not a forcible entry.
>
>   [Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 30–41; Dec. Dig. § 16.*]

3. ADVERSE POSSESSION (§ 115*)—JURY QUESTION.
>   Evidence *held* to make it a jury question whether defendant and his grantors held the tract in controversy by adverse possession.
>
>   [Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. § 115.*]

4. NEW TRIAL (§ 161*)—TERMS—COSTS.
>   Plaintiff was not entitled to compel defendant to pay the costs of the former trial as a condition to granting a new trial because the verdict was against the preponderance of the evidence.
>
>   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 321–323; Dec. Dig. § 161.*]

Appeal from Trial Term, Oneida County.

Action by Mary Kahler against Martin H. Thron. From an order granting defendant's motion for new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and KRUSE, ROBSON, FOOTE, and LAMBERT, JJ.

W. G. Shankenbery, of Rome (John E. Mason, of Rome, of counsel), for appellant.

Elliott O. Worden, of Rome, for respondent.

FOOTE, J.   The verdict of the jury in plaintiff's favor was set aside by the trial court, on the ground that it was contrary to and against the weight of the evidence.

The action is in ejectment to recover a parcel of land, triangular in form, containing about four acres, bounded upon two sides by Canada creek, which, in general, is the boundary line between the farms of the parties.   The complaint alleges that on or about October 29, 1896, "plaintiff was in possession under claim of title and ownership in fee" of the disputed premises; "that during the year 1898 defendant forcibly entered said premises and took possession thereof, and has since wrongfully held possession thereof and occupied the same."   The answer, after a general denial, alleges that defendant is the owner in fee simple absolute and in possession, and rightfully entitled to pos-

session; also, as a separate defense, that neither plaintiff nor her grantors were seised or possessed of the premises within 20 years, but that defendant and the grantors under whom he claims entered into possession under claim of title founded upon an instrument of conveyance, and have continued in possession for more than 20 years under such claim. It is to be observed that plaintiff does not allege ownership in fee, but possession on the date named under a claim of title or ownership.

No attempt was made by either party to trace the ownership of the fee of the disputed land from any recognized source of title, or any common source. The deeds put in evidence by plaintiff begin with a deed from James N. Whittemore and wife to John Hitchings, Jr., and others, dated September 20, 1850. This deed conveys a parcel of land containing 12.47 acres by metes and bounds, a part of Scriba's patent, one boundary being the center of Canada creek. The part of the deed which plaintiff claims conveys the disputed lands follows the description of the 12.47 acres, and is as follows:

"Also a parcel of land adjoining thereto, covered by the water of the mill-pond, raised by a dam to be no higher than the present (1843) dam upon the premises containing 3.70 acres as surveyed by F. Perry in 1829."

This clause in the same form is included in the subsequent deeds, to and including the deed to plaintiff, made October 28, 1896, although the millpond had disappeared by the destruction of the dam before 1873.

Defendant put in evidence the deeds in his chain of title, beginning with the deed from the executors of Arba Blair, dated February 8, 1864, to Simon Baker. By this deed 26.31 acres, described by metes and bounds, are conveyed, one boundary being Canada creek, and being a part of Fonda's patent. This land is on the opposite side of Canada creek from the 12.47 acres of the plaintiff, and at this point the Canada creek is the boundary between the Fonda and the Scriba patent. Whether the disputed lands are embraced in the description of the 26.31 acres depends upon the then location of the main channel of the Canada creek. If it ran in its present channel north of the disputed lands, then they appear to be embraced in the description of this deed; but if it ran in what is shown on the map made by defendant's surveyor (Exhibit No. 15) as the old channel southeast of the disputed lands, then they are not included.

Which of these channels was the main channel of that period was one of the disputed question in the case. No plotting of defendant's farm was made by his surveyor from which the quantity could be ascertained. Had this been done, it might have furnished considerable aid to the jury on the question as to which was the main channel of that period. The deeds in plaintiff's chain of title do not indicate whether the lands flooded by the millpond were a part of Scriba's patent or of Fonda's patent, nor did either party go back in their evidence far enough to show whether, if the millpond lands were a part of the Fonda patent, any of plaintiff's remote grantors had acquired title to these lands in fee.

[1, 2] Plaintiff's evidence did not sustain the allegation of her complaint that she was in possession of the disputed lands on October 29, 1896, which was the date she received her deed, or any time subsequent thereto. On the contrary, it appeared without substantial question that defendant and his grantors had had possession and had used these lands as a part of defendant's farm for cultivation and pasturage since 1874. Plaintiff testified that, some time after defendant received the deed of his farm in 1898, she said to defendant, "I want to build a fence on the line and take my property," and he answered, "No." It does not appear in what year this conversation took place, but nothing further appears to have been done in reference to possession until shortly before this action was begun in July, 1910, when plaintiff undertook to assert possession by having a fence built between these lands and defendant's other lands. This was done on a Saturday afternoon or evening, but upon discovering the fence next day defendant had it removed. We think plaintiff did not by this transaction obtain actual possession of these lands, nor did defendant's removal of the fence constitute a forcible entry by him. Hence we think plaintiff did not prove possession in herself at any time after she received her deed, or forcible entry by defendant, as alleged in the complaint.

She did, however, give testimony from which the jury may have found that Andrew Kahler, who received a deed of plaintiff's farm December 11, 1865, did have possession of the disputed lands at some time between 1865 and 1869. The deed to Kahler and his possession thereunder is sufficient prima facie to show Kahler to be the owner at that time, and this made for the plaintiff a prima facie case, entitling her to recover by virtue of the Kahler title, which she had received, unless defendant was able to prove that Kahler had not received the legal title, or that defendant had acquired title by adverse possession. Thus, in respect of the question of title, we think there was a question of fact for the jury, although the case as made was not the case as alleged in the complaint.

[3] The question of the adverse possession of defendant and his grantors was clearly a question of fact to be submitted to the jury. Plaintiff and Hartman Thron, Jr., both gave testimony to the effect that they overheard a conversation between Andrew Kahler and Hartman Thron, Sr. (since deceased), in the spring of 1874, in reference to these disputed lands. At that time Thron, Sr., owned and had possession of defendant's farm, and Kahler of plaintiff's farm. In this conversation Kahler stated to Thron that he claimed to own these disputed lands, but, as his access to them was inconvenient, Thron might use the lands until he (Kahler) needed them, and that Thron replied, "I will do so; I will use it until you want it." The witness Thron also testified that in 1880, when he took the farm from his father, Hartman Thron, Sr., to work, his father said to him he could work the farm and use the disputed lands until Mr. Kahler wanted them, and "then we will have to give them up." We think this testimony was properly received to characterize Thron's possession as being in subordination to the Kahler title. If the jury accepted this testimony as

true, it is sufficient to show that the occupation of Hartman Thron, Sr., of the disputed lands from 1874 to August 29, 1892, when he conveyed them to Christine Thron, was not adverse to the Kahler title, now vested in plaintiff. There is, however, no evidence that Christine Thron, from the time she received title, August 29, 1892, or defendant, who is her grantee, ever recognized plaintiff, or her grantor, as the owner of the disputed lands; but adverse possession, beginning August 29, 1892, would not be of sufficient duration to defeat plaintiff's right of recovery. There was, however, clearly a question of fact as to whether the previous possession of Hartman Thron, Sr., was not adverse, and, if found to be such, then adverse possession for more than 20 years could be found. We think a question of fact was presented for the jury upon this branch of the case, which was properly submitted by the learned trial judge.

There is a more serious question, however, as to whether, if it be conceded that plaintiff is entitled to recover the land which formed the bed of the old millpond, the evidence is sufficient to justify a verdict to the effect that the four acres of land which have been awarded to the plaintiff by the verdict were all, or to any considerable extent, covered by this millpond. Clearly plaintiff has no right to recover more of these lands than were actually in the bed of this millpond. We think the learned trial judge was right in holding as he did, upon granting the motion to set aside the verdict, that the preponderance of the evidence is against the plaintiff's claim that the millpond covered all this disputed land, and we think that the ends of justice will be promoted by another trial.

[4] It is urged, however, that terms should have been imposed, requiring the defendant to pay costs of the former trial, as a condition of granting a new trial. We think plaintiff was not entitled to have such a condition imposed. Waltz v. Utica & Mohawk Valley Ry. Co., 116 App. Div. 563, 101 N. Y. Supp. 968; Rothenberg v. Brooklyn Heights R. R. Co., 135 App. Div. 151, 119 N. Y. Supp. 1001; Post v. Kerwin, 150 App. Div. 321, 134 N. Y. Supp. 714.

The order appealed from should be affirmed, with costs. All concur; McLENNAN, P. J., in result only.